**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

BRENDA SPRADLIN,

    Plaintiff,

vs.                                          CASE NO. 3:07-cv-763-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

_____

**ORDER AND OPINION**

This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's claim for a period of disability and disability insurance benefits ("DIB"). The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).

The Court has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings. For the reasons set out herein, the Commissioner's decision is **REVERSED and REMANDED**.

**I. Procedural History**

On December 31, 2003, Plaintiff filed an application for DIB benefits (Tr. 84-86). Plaintiff's application was denied initially and upon reconsideration (Tr. 24-30). Pursuant to Plaintiff's request, an administrative hearing was conducted on August 23, 2006, in Jacksonville, Florida, before Administrative Law Judge William H. Greer (the "ALJ") (Tr.

539-65). In a decision dated September 25, 2006, the ALJ denied Plaintiff's claim by finding her able to perform past relevant work (Tr. 19-20). On June 20, 2007, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (Tr. 6-8). Plaintiff now appeals under 42 U.S.C. Section 405(g). On July 31, 2008, the Court conducted a hearing with Plaintiff's counsel, Jessica Dumas, and Defendant's counsel, Susan Waldron, in order to clarify inconsistencies and uncertainties contained within the record.[1] At the hearing counsel for both parties attempted to clarify the record with information available to them; however, portions of the record remain unclear. The information provided and issues discussed during the hearing will be indicated where applicable.

## II. Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act when he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(i-v);[2] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The scope of this Court's

---

[1] The non-transcribed recording of the hearing is hereby incorporated by reference. The parties may contact the Courtroom Deputy of the undersigned if a transcript of the hearing is desired.

[2] All references made to 20 C.F.R. will be to the 2008 edition unless otherwise specified.

review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must

determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove they suffer from disabling physical or mental functional limitations. 20 C.F.R. § 404.704.

### III. Background Facts

Plaintiff was 57 years old at the time of the ALJ's decision with past relevant work experience as an office manager, a licensed practical nurse, a director of nursing services, and an insurance clerk (Tr. 555-56).

**A. Medical Evidence**

Plaintiff alleged the onset date for her disability began on January 2, 2002, as a result of her medical conditions, including chronic back and leg pain (Tr. 127-28). From January to August of 2002, Claudio E. Vincenty, M.D. ("Dr. Vincenty") treated Plaintiff's back pain by administering a number of injections (*see* Tr. 229-43). Plaintiff then presented to Victoria A. Maquera, M.D. ("Dr. Marquera") from January, 2003 to June, 2004 for back

4

pain and a mood disorder (*see* Tr. 247, 274-75).  In 2003, Craig A. Kornick, M.D. ("Dr. Kornick") of the Riverside Spine Clinic also treated Plaintiff's back by administering a number of back injections to relieve Plaintiff's pain (Tr. 251, 258-60, 355, 365, 369, 375, 377, 379).

On April 28, 2004, Plaintiff presented to Timothy McCormick, D.O., M.P.H. ("Dr. McCormick"), a state agency medical consultant, for a physical examination and consultation (Tr. 290-95).  Dr. McCormick performed a neurological examination of Plaintiff and reported that she had weakness in her right lower extremities (Tr. 293).  Dr. McCormick, however, was unable to provide a particular explanation for Plaintiff's weakness (Tr. 293).  Dr. McCormick also reported that Plaintiff may need to change positions periodically due to joint pain (Tr. 293).  Dr. McCormick also commented, "[if] necessary, functional testing may be required to help define [Plaintiff's] activity level and tolerance" (Tr. 294).

On May 19, 2004, a state agency medical consultant completed a Physical Residual Functional Capacity Assessment ("RFC") of Plaintiff (Tr. 310-17).  The medical consultant reported Plaintiff could lift twenty pounds occasionally and ten pounds frequently (Tr. 311).  The medical consultant also found Plaintiff could stand, walk, and sit for about six hours in an eight hour workday (Tr. 311).  It was further reported that Plaintiff's ability to push was limited by her lower extremities (Tr. 311).

On February 9, 2006, a Gary Kelly ("Mr. Kelly") conducted a Functional Capacity Evaluation of Plaintiff (Tr. 510-12).[3] During the three hour Functional Capacity Evaluation, Plaintiff performed a number of physical tests in order to demonstrate her functional abilities related to work activities (*see* Tr. 510-12).  Mr. Kelly noted that Plaintiff gave a consistent effort during each test and further, Plaintiff did not demonstrate abnormal pain symptoms (Tr. 510, 512).  Mr. Kelly determined Plaintiff could perform a maximum of sedentary work but also reported Plaintiff may have difficulty participating in a full day basis due to limited tolerance of sedentary activities such as, prolonged sitting, standing, and walking (Tr. 510).[4]

Jeffrey Caudill, M.D. ("Dr. Caudill"), a pain management specialist, treated Plaintiff from October, 2005 to April, 2006 (Tr. 447-49, 527).  Dr. Caudill's treatment of Plaintiff included a physical therapy program, followed by back injections to relieve Plaintiff's pain (*see* Tr. 423-38, 444-45).

On February 17, 2006, Dr. Caudill completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) for Plaintiff (Tr. 506-09).  Dr. Caudill based the findings in his Medical Source Statement on Plaintiff's Functional Capacity Evaluation that was conducted on February 9, 2006 (*see* Tr. 507-08, 510-12).[5]  In his Medical Source

---

[3]Mr. Kelly's signature is partially illegible; however, it appears his name is either Gary or Grey Kelly.  This matter was discussed at the hearing held by the Court on July 31, 2008 but neither party was able to provide the Court with Mr. Kelly's actual name.

[4]The record does not indicate either who Mr. Kelly works for or his job title.  During the hearing conducted by the Court on July 31, 2008, Plaintiff's counsel purported, based on notes from Dr. Caudill, that Mr. Kelly was probably a Registered Physical Therapist but this information was not confirmed.

[5]During the Court's hearing on July 31, 2008, Plaintiff's counsel reported that Dr. Caudill did not want to complete a Medical Source Statement for Plaintiff until she underwent a Functional Capacity Evaluation.  Apparently, Dr. Caudill referred Plaintiff to Mr. Kelly to undergo a Functional Capacity Evaluation.

Statement, Dr. Caudill reported Plaintiff could occasionally lift and/or carry less than ten pounds and could stand and/or walk at least two hours in an eight hour workday (Tr. 506). Furthermore, Dr. Caudill noted Plaintiff would need to alternate between sitting and standing periodically and Plaintiff's ability to push and/or pull would be limited in both the upper and lower extremities (Tr. 507). Dr. Caudill also found Plaintiff could never climb, balance, kneel, crouch, crawl, or stoop (Tr. 507).

On March 7, 2006, (nearly three weeks after Dr. Caudill signed Plaintiff's Functional Capacity Evaluation) Dr. Caudill reported in his treatment notes that Plaintiff underwent a Functional Capacity Evaluation; however, he stated that he had not yet received the results of the Functional Capacity Evaluation (Tr. 529). On April 4, 2006, Dr. Caudill reported that he would no longer be able to benefit Plaintiff because she was unable to tolerate pain medications (Tr. 527). Dr. Caudill advised Plaintiff to continue physical therapy and relaxation techniques at home (Tr. 527).

**B. The ALJ's Decision**

In his decision dated September 25, 2006, the ALJ found Plaintiff suffered from degenerative disc disease, osteoarthritis of the right knee, and an affective disorder (Tr. 16). The ALJ further found Plaintiff's impairments to be severe within the meaning of the Regulations, but not severe enough to meet or medically equal any of the listed impairments in 20 C.F.R. part 404, subpart P, Appendix 1 (Tr. 17). After careful consideration of the entire record, the ALJ found Plaintiff retained the RFC to:

> sit for 6 hours, stand for 2 hours or 30 minutes without interruption; walk for 2 hours or 30 minutes without interruption; frequently lift up to 10 pounds; occasional bending, stooping, stair climbing or crouching; no crawling, kneeling, working at unprotected heights or around dangerous moving machinery. She [Plaintiff] also requires the freedom to be on her feet for at

> least 5 minutes every hour. Despite her mental disorder, she is able to interact appropriately with the public and supervisors and respond appropriately in a work setting

(Tr. 17).

After determining Plaintiff's RFC and taking testimony from a vocational expert ("VE"), the ALJ found Plaintiff could perform her past relevant work as an office manager, an insurance clerk, or a director of nursing services (Tr. 19-20). *See* United States Dep't of Labor, *Dictionary of Occupational Titles* §§ 169.167-034, 214.362-022, 075.117-022 (4th ed. 1991). Based in part on the VE's testimony and after finding Plaintiff's allegations regarding her limitations not entirely credible, the ALJ found Plaintiff was not under a disability as defined by the Social Security Act (the "Act") (Tr. 19-20).

### IV. Analysis

Plaintiff claims the ALJ erred by failing to properly discount the opinion of Plaintiff's treating physician, Dr. Caudill (Doc. #9 at 14). The Court finds Plaintiff's argument persuasive for the following reasons.

Substantial weight must be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards*, 937 F.2d at 583; 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is consistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective

medical evidence or is wholly conclusory.  *See Edwards*, 937 F.2d at 583.

Here, Plaintiff's treating physician, Dr. Caudill, completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) on February 17, 2006 (Tr. 506-09).  Dr. Caudill found Plaintiff was able to lift less than ten pounds occasionally and could stand and/or walk at least two hours in an eight hour workday (Tr. 506).  Furthermore, Dr. Caudill reported Plaintiff would need to alternate between sitting and standing periodically to relieve pain or discomfort (Tr. 507).  Dr. Caudill also found Plaintiff could never climb, balance, kneel, crouch, crawl, or stoop (Tr. 507).  Dr. Caudill based his assessment of Plaintiff on the Functional Capacity Evaluation administered by Mr. Kelly on February 9, 2006 (*see* Tr. 507-08, 510-12).

The ALJ discredited Dr. Caudill's assessment by stating, "Dr. Caudill's explanation for his findings were 'functional capacity testing' which is tantamount to the claimant's own subjective limitations" (Tr. 18).  Additionally, the ALJ determined there were no objective findings to support the extreme limitations reported in Dr. Caudill's Medical Source Statement (Tr. 18).  The Court finds the ALJ's assertions are unsupported by the record.

Plaintiff's treating physician, Dr. Caudill, based his Medical Source Statement findings on the Functional Capacity Evaluation performed by Mr. Kelly on February 9, 2006 (*see* Tr. 507-08, 510-12).  It appears from the record that the Functional Capacity Evaluation Dr. Caudill relied upon was an objective test in which Plaintiff performed a series of physical exercises over a three hour period in order for her functional capacity for work-related activities to be determined (*see* Tr. 510-12).  Additionally, the evaluation does not appear to be tantamount to Plaintiff's own subjective limitations because Mr. Kelly reported that Plaintiff gave a consistent effort during each exercise of the examination and that she

did not demonstrate abnormal pain symptoms (Tr. 510, 512).

Mr. Kelly concluded that Plaintiff could function (at maximum) at a sedentary level, but also noted Plaintiff may not be able to participate in a full day because her tolerance for sedentary activities such as prolonged sitting, standing, and walking were limited (Tr. 510).[6] Contrary to the ALJ's determination that no objective findings support Dr. Caudill's assessment, the Functional Capacity Evaluation appears to be an objective test which supports the limitations reported by Dr. Caudill in his Medical Source Statement.

Furthermore, pursuant to 20 C.F.R. § 404.1512(e)(1):

We [the SSA] will seek additional evidence or clarification from your [Plaintiff's] medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

In this case, the Medical Source Statement provided by Plaintiff's treating physician, Dr. Caudill, contains a conflict with other evidence of record (Tr. 510-12). Specifically, on February 17, 2006, Dr. Caudill signed the Functional Capacity Evaluation completed by Mr. Kelly; however, on March 7, 2006, Dr. Caudill reported that he had not yet received the results of Plaintiff's Functional Capacity Evaluation (Tr. 509, 529). The conflict between the dates is pertinent because Dr. Caudill relied on "Functional Capacity Testing" when he completed the Medical Source Statement for Plaintiff; therefore, it is necessary to know what "Functional Capacity Testing" Dr. Caudill relied upon when he completed the Medical

---

[6]Although Mr. Kelly stated Plaintiff may not be able to participate in a full workday because her tolerance for sedentary work activities such as prolonged sitting, standing, and walking were limited, the Court notes that standing and walking are only occasionally required to perform sedentary work. Specifically, the Regulations define a sedentary job as one which involves sitting and occasional walking and standing. 20 CFR 404.1567(a) ("jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met").

Source Statement (Tr. 507-08).

Additionally, the findings of the Medical Source Statement completed by Dr. Caudill conflict with the findings of the Residual Functional Capacity Assessment completed by a state agency medical consultant on May 19, 2004 (*see* Tr. 506-09, 310-17). The Residual Functional Capacity Assessment showed Plaintiff could lift twenty pounds occasionally and ten pounds frequently (Tr. 311). The medical consultant also found Plaintiff could stand, walk, and sit for about six hours in an eight hour workday (Tr. 311). [7]

The Medical Source Statement completed by Dr. Caudill, however, imposed far greater restrictions on Plaintiff's functional abilities that the 2004 Residual Functional Capacity Assessment (*see* Tr. 506-09). The discrepancy between the findings in each assessment is important because the ALJ relied on the medical consultant as an expert and gave significant weight to the 2004 Residual Functional Capacity Assessment (Tr. 19). Conversely, the ALJ did not give great weight to the more recent 2006 Medical Source Statement completed by Plaintiff's treating physician, Dr. Caudill, in 2006 (Tr. 18).

Finally, the Functional Capacity Evaluation that Dr. Caudill relied on did not contain all of the necessary information the ALJ needed to make his determination (*see* Tr. 510-12). For example, the signature of the evaluator, Mr. Kelly, is partially illegible, making the identity of the medical evaluator unclear (Tr. 510). Also, the record does not reveal Mr. Kelly's qualifications to perform such evaluations (*see* Tr. 510-12). The incomplete information may have led the ALJ to doubt the validity of the Functional Capacity Evaluation performed by Mr. Kelly (*see* Tr. 18). This is evidenced by the ALJ's statement that the

---

[7] The Court notes the medical consultant's assessments were made without any treating or examining source statement(s) regarding Plaintiff's physical capacities on file (Tr. 316).

11

Functional Capacity Evaluation was tantamount to Plaintiff's subjective complaints (Tr. 18). Without the relevant information regarding this evaluation, however, the ALJ could not properly determine whether the Functional Capacity Evaluation was completed by a qualified examiner or whether it was appropriate for Dr. Caudill to rely on Mr. Kelly's examination.

Due to the conflicting evidence and the missing information, the ALJ should have re-contacted Plaintiff's treating physician, Dr. Caudill, to obtain the necessary evidence in order to make a proper determination regarding Plaintiff's disability.

## V. Conclusion

The Court is precluded from reweighing the evidence anew, but it is nonetheless obligated to review the record in its entirety. *Foote*, 67 F.3d at 560. The Court's independent review of the record reveals conflicts between the ALJ's findings and the evidence of record. Thus, it is impossible to say the ALJ's decision is supported by substantial evidence.

For the foregoing reasons, the decision of the Commissioner is not supported by substantial evidence or decided according to proper legal standards. Accordingly, the Commissioner's decision is hereby **REVERSED and REMANDED**.

Plaintiff is cautioned, however, that this opinion does not suggest Plaintiff is entitled to disability benefits. Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether Plaintiff is disabled within the meaning of the Social Security Act. *Phillips v. Barnhart*, 357 F.3d 1232, 1244 (11th Cir. 2004).

Upon remand, the Commissioner shall reevaluate Plaintiff in accordance with the applicable Regulations and prevailing case law. It is the view of this Court that additional proceedings should be conducted in light of this Order and Opinion.

### VI. Directions as to Judgment

The Clerk of Court is directed to enter judgment consistent with this Order and Opinion, and thereafter to close the file. The judgment shall state that if Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) must be filed within fourteen (14) days of the Commissioner's final decision to award benefits. *See Bergen v. Commissioner of Social Security*, 454 F.3d 1273, 1278 (11th Cir. 2006); *compare* Fed. R. Civ. P. 54(d)(2)(B); M.D. Fla. Loc. R. 4.18(a).

**DONE AND ORDERED** at Jacksonville, Florida this 22nd day of September, 2008.

*Thomas E. Morris*
THOMAS E. MORRIS
United States Magistrate Judge

Copies to all counsel of record